TARA K. MCGRATH
United States Attorney
JOSHUA C. MELLOR (CA 255870)
MIKAELA L. WEBER (CA 279391)
PETER S. HORN (CA 321358, NY 5333653)
Assistant U.S. Attorneys
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: 619-546-9733
Email: joshua.mellor@usdoj.gov

Attorneys for United States of America

## UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 21-CR-1623-JLS-17 |
| Plaintiff, | PLEA AGREEMENT |
| v. | |
| OSEMAH ELHASSEN (17), | |
| Defendant. | |

IT IS HEREBY AGREED between the plaintiff, UNITED STATES OF AMERICA, through its counsel, TARA K. MCGRATH, United States Attorney, and Joshua C. Mellor, Mikaela L. Weber, and Peter S. Horn, Assistant United States Attorneys, and Defendant OSEMAH ELHASSEN, with the advice and consent of Matthew J. Lombard, counsel for Defendant, as follows:

I

### THE PLEA

Defendant agrees to plead guilty to Count 1 of the Superseding Indictment charging Defendant with Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d).

//

//

//

## II

## **VENUE**

Defendant hereby agrees and stipulates that venue for the offense charged in Count 1 lies in the Southern District of California under 18 U.S.C. § 3237 because criminal activity of the ANOM RICO ENTERPRISE occurred within the Southern District of California.

## III

## **NATURE OF THE OFFENSE**

A.    ELEMENTS EXPLAINED

The offense to which Defendant is pleading guilty has the following elements:

**Count 1 – RICO Conspiracy to Conduct Enterprise Affairs**

     1.    ANOM was an enterprise;

     2.    ANOM was engaged in interstate or foreign commerce, or its activities in some way affected (or were contemplated to in some way affect) interstate and foreign commerce;

     3.    Defendant was employed by or associated with ANOM;

     4.    There was an agreement between two or more persons to conduct (or participate, directly or indirectly, in the conduct of) ANOM's affairs through a pattern of racketeering activity.

     5.    Defendant became a member of the conspiracy knowing of its illegal objects and intending to help accomplish them.

Plea Agreement

2

Def. Initials _OG_

21-CR-1623-JLS

B.   ELEMENTS UNDERSTOOD AND ADMITTED – FACTUAL BASIS

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each element of the crime and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:

**Enterprise**

1.   The administrators, influencers, distributors, and agents of the ANOM brand hardened encrypted device were an enterprise (the "ANOM ENTERPRISE"); that is, ANOM was an association and a group of individuals associated-in-fact for the purposes of (1) aiding and abetting the importation, exportation, and distribution of illegal drugs throughout the world; (2) obstructing justice through the destruction and concealment of evidence from law enforcement; and (3) money laundering.

2.   The organizational structure of the ANOM ENTERPRISE included individuals in the following roles, among others:

   a.   Administrators: Individuals who had physical control of the ANOM ENTERPRISE's network and could initiate new subscriptions, set up access for Distributors, remove accounts, and remotely delete (i.e., wipe) and reset devices.

   b.   Influencers: Well-known crime figures who wielded significant power and influence over other criminal associates. These Influencers built a reputation for their knowledge and expertise in the hardened encrypted device field and used that power, knowledge, and

1    expertise to promote, market, and encourage others to

2    use specific hardened encrypted devices.

3        c.   Distributors: Individuals who coordinated groups of

4    agents of the ANOM ENTERPRISE who received payments for

5    ongoing subscription fees, sent associated funds (minus

6    personal profit) back to the parent company, and

7    provided second-level technical support. Distributors

8    would also remotely delete and reset devices.

9    Distributors communicated and coordinated directly with

10    the ANOM ENTERPRISE's Administrators.

11        d.   Agents: Individuals who physically sourced and engaged

12    with new customers to sell and deliver devices with

13    initial and renewal subscriptions. Agents earned a

14    profit on the sale of the handset only and provided

15    first-level technical support to their groups of

16    criminal end-users.

17    3.    Members of the ANOM ENTERPRISE coordinated together to ensure

18    the success of the enterprise as a hardened encrypted

19    communications platform developed "by criminals for

20    criminals."

21    4.    Defendant was a Distributor of ANOM devices for the ANOM

22    ENTERPRISE.[1]

23    5.    Defendant distributed ANOM devices to criminal end-users

24    between at least October 2019 and June 2021.

25    6.    Through communications, including text messages, photographs,

26    and voice memos between members of the ANOM ENTERPRISE which

27    _____

28    [1] As noted below, Section XI.A, Defendant still may argue that the enhancement for aggravating role under USSG § 3B1.1(c) does not apply.

4    Def. Initials _OE_

21-CR-1623-JLS

U.S. investigators lawfully obtained, Defendant and others facilitated the importation, exportation, and distribution of wholesale quantities of federally controlled substances, including cocaine and methamphetamine, both Schedule II Controlled Substances, throughout the world. It was reasonably foreseeable to Defendant that, as part of this conspiracy, ANOM Distributors including Defendant sold ANOM devices knowing and intending they be used to coordinate the importation, exportation, and distribution of at least 15 kilograms of cocaine, and in fact, they did so.

7.  For example:

    a.  On or about September 9, 2020, Defendant discussed cocaine trafficking and drug concealment with one of his ANOM co-conspirators, BARIS TUKEL ("TUKEL"), who was the user of at least one ANOM Jabber Identification ("JID"), JID 58f3a9, with the username "Brian".

    b.  On or about October 23, 2020, Defendant and TUKEL discussed drug concealment and the possibility of using a coffee company to facilitate cocaine trafficking.

    c.  In addition, on or about November 4, 2020, TUKEL and another ANOM user discussed cocaine trafficking, including a crew that sends drugs to Europe, sends drugs from the United States to Australia, and was working with at least 12-kilogram batches. TUKEL and this co-conspirator also discussed distilling, crystallizing, and distributing methamphetamine.

8.   Through the ANOM ENTERPRISE, Defendant and others sourced hardened encrypted devices and sold devices that had been configured to send and receive encrypted messages. Defendant did not request, track, or record his customers' real names and strove to remain as anonymous as possible to evade law enforcement.

9.   Members of the ANOM ENTERPRISE, of which Defendant was a member and for which he was a Distributor, obstructed law enforcement by deleting and/or enabling the deletion of content from devices after ANOM devices were seized by law enforcement.

10.  Through the ANOM ENTERPRISE, Defendant and others laundered and conspired to launder monetary instruments.  These funds were the proceeds of specified unlawful activity(ies), including, specifically, the importation, exportation, and distribution of federally controlled substances.

11.  Through the ANOM ENTERPRISE, Defendant and others used cryptocurrency to facilitate the laundering of the ENTERPRISE's members' ill-gotten gains and to protect members' anonymity.

**Interstate/Foreign Commerce**

12.  The distribution of hardened encrypted devices around the world by the ANOM ENTERPRISE affected interstate and foreign commerce.

//

//

//

**Association**

13. Defendant was associated with the ANOM ENTERPRISE. He was a Distributor and the user of JID b71bd1, with the username "tiger".

14. Defendant coordinated directly with other members of the ANOM ENTERPRISE, including Administrators, Distributors, Influencers, and Agents, to facilitate the distribution and further the notoriety of their product among transnational criminal organizations.

15. Defendant obtained payment from the ANOM ENTERPRISE, including criminal end-users, for his sale and promotion of ANOM devices.

16. For example:

    a. On or about December 18, 2019, Defendant and another ANOM user discussed the distribution of ANOM devices and confirmed Defendant's sale—and subsequent set up—of four devices to Bogota, Colombia and six devices to Cali, Colombia. Defendant also stated the price per device was 3.2 million Colombia pesos (or approximately $960 (USD)).

    b. On or about May 28, 2020, Defendant wrote to another ANOM user and co-conspirator, "I am Colombia agent" and "I will pass you a number in California", which Defendant did, as "a favor for a friend from oz [Australia]".

    c. On or about September 30, 2020, Defendant discussed with TUKEL the sale and renewal of ANOM devices, the price of ANOM renewal, and Defendant's distribution of ANOM

1        devices within Colombia. Among other things, Defendant

2        stated to TUKEL, "No one else in col [Colombia] rather

3        then [sic] me brother".

4    d.   On or about October 21, 2020, Defendant discussed the

5        prices for several ANOM devices (in that case,

6        approximately 28 million Colombian pesos, or

7        approximately $7,300 USD for seven ANOM devices) with

8        another co-conspirator and provided his (Defendant's)

9        own name and bank information for payment.

10    e.   On or about February 18, 2021, Defendant and MAXIMILIAN

11        RIVKIN ("RIVKIN") discussed the sale of four ANOM

12        devices: two in Cali, Colombia, one in Ecuador, and one

13        in Argentina, plus an eight percent surcharge for

14        payment by Bitcoin. RIVKIN was another co-conspirator

15        whose role(s) included serving as an Administrator and

16        Influencer for the ANOM ENTERPRISE, and he was the user

17        of at least one JID, JID 56d3f9, with the username

18        "Microsoft".

19    f.   On or about February 19 and 20, 2021, Defendant and

20        RIVKIN discussed the prices of two ANOM devices going to

21        Cali, Colombia and payment by Bitcoin. Defendant also

22        wrote to RIVKIN that he (Defendant) had already given

23        one device to a "cartel" contact for free and so could

24        no longer "play with the price."

25    g.   On or about February 26 and March 17, 2021, Defendant

26        and DRAGAN NIKITOVIC, aka Dr. Djek ("NIKITOVIC"),

27        discussed setting up and support for ANOM devices.

28

1    Defendant assisted NIKITOVIC with ANOM device set-up and

2    support, and Defendant asked NIKITOVIC to send him an

3    ANOM device so that it could be "fix[ed]". NIKITOVIC was

4    another co-conspirator whose role(s) included serving as

5    a Distributor for the ANOM ENTERPRISE, and he was the

6    user of multiple JIDs, including JID b2adb9, with the

7    username "🏵DR.DJEK🏵⚫", and JID 5dcbbf, with the

8    username "co🎇DR.SUPPORT🎇".

9    h.    On or about March 6, 2021, Defendant wrote to SHANE

10        GEOFFREY MAY ("MAY") "I am anom colombia" and discussed

11        ANOM sales in Colombia. MAY was another ANOM co-

12        conspirator whose role(s) included serving as a

13        Distributor for the ANOM ENTERPRISE, and he was the user

14        of at least one JID, JID 7a23ad, with the username

15        "🏵🏵🏵🏵🏵".

16    i.    On or about April 28, 2021, Defendant and another ANOM

17        user and co-conspirator discussed renewals of ANOM

18        devices and images listing Defendant as the Agent for at

19        least six devices and end-users.

20    j.    On or about May 9, 2021, Defendant sent JOSEPH HAKAN

21        AYIK ("AYIK") messages about a "VIP service" for ANOM

22        devices and access to the ANOM "portal" on ANOM devices.

23        AYIK was another ANOM co-conspirator, whose role(s)

24        included serving as an Administrator and Influencer for

25        the ANOM ENTERPRISE, and he was the user of at least one

26        JID, JID 61455e, with the username "Oscar".

27

28

1    **Agreement**

2    17.   Beginning at least as early as November 2019 and continuing

3          up to and including June 7, 2021, Defendant agreed with

4          others, including AYIK, RIVKIN, TUKEL, MAY, NIKITOVIC, and

5          others to conduct ANOM ENTERPRISE's affairs through a pattern

6          of racketeering activity. Defendant's agreement with his co-

7          conspirators included the understanding that the ANOM

8          ENTERPRISE would be engaged in multiple racketeering

9          activities on a nearly daily basis for the benefit of the

10         ANOM ENTERPRISE, including (i) facilitating the importation,

11         exportation, and distribution of wholesale and retail

12         quantities of cocaine and methamphetamine, both Schedule II

13         Controlled Substances; (ii) laundering the illegal proceeds

14         of the ANOM ENTERPRISE; and (iii) obstructing justice through

15         the deletion and concealment of evidence from law

16         enforcement.

17   18.   Defendant became a member of the conspiracy knowing the

18         illegal objects of the conspiracy and intending to help

19         accomplish them.

20                                    **IV**

21                               **PENALTIES**

22   The crime to which Defendant is pleading guilty carries the

23   following penalties:

24   A.   a maximum 20 years in prison,

25   B.   a maximum $250,000 fine, or twice the gross gain or loss from

26        the offense, whichever is greater;

27   C.   a mandatory special assessment of $100 per count;

28

D.   a term of supervised release of up to 5 years. Failure to comply with any condition of supervised release may result in revocation of supervised release, requiring Defendant to serve in prison, upon revocation, all or part of the statutory maximum term of supervised release; and

E.   forfeiture of all interests the defendant acquired or maintained in violation of 18 U.S.C. § 1962; all interests in, securities of, and claims against properties and contractual rights of any kind affording a source of influence over, any enterprise which the defendant established, operated, controlled, conducted, or participated in the conduct of, in violation of 18 U.S.C. § 1962; and all properties constituting or derived from proceeds obtained directly or indirectly from racketeering activity.

## V
### DEFENDANT'S WAIVER OF TRIAL RIGHTS AND UNDERSTANDING OF CONSEQUENCES

This guilty plea waives Defendant's rights at trial to:

A.   Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;

B.   A speedy and public trial by jury;

C.   The assistance of counsel at all stages;

D.   Confront and cross-examine adverse witnesses;

E.   Testify and present evidence and to have witnesses testify on behalf of Defendant; and,

F.   Not testify or have any adverse inferences drawn from the failure to testify;

Def. Initials *OE*
21-CR-1623-JLS

G.  Assert any rights and defenses defendant may have under the Excessive Fines Clause of the Eighth Amendment to the United States Constitution to the forfeiture of property in this proceeding or any related civil or criminal proceeding; and

H.  Assert at trial or on appeal any legal, constitutional, statutory, regulatory, and procedural rights and defenses that he may have under any source of federal law, including among others, challenges to personal jurisdiction, extraterritoriality, statute of limitations, venue, and the form and substance of the Indictment, including any claims of multiplicity or duplicity.

Defendant has been advised by counsel and understands that because Defendant is not a citizen of the United States, Defendant's conviction in this case makes it practically inevitable and a virtual certainty that Defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future.

## VI

### DEFENDANT ACKNOWLEDGES NO PRETRIAL RIGHT TO BE PROVIDED WITH IMPEACHMENT AND AFFIRMATIVE DEFENSE INFORMATION

Any information establishing the factual innocence of Defendant known to the undersigned prosecutor in this case has been turned over to Defendant. The Government will continue to provide such information establishing the factual innocence of Defendant.

If this case proceeded to trial, the Government would be required to provide impeachment information for its witnesses. In addition, if Defendant raised an affirmative defense, the Government would be

required to provide information in its possession that supports such a defense. By pleading guilty Defendant will not be provided this information, if any, and Defendant waives any right to this information. Defendant will not attempt to withdraw the guilty plea or to file a collateral attack based on the existence of this information.

## VII

### DEFENDANT'S REPRESENTATION THAT GUILTY PLEA IS KNOWING AND VOLUNTARY

Defendant represents that:

A.   Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charges and the consequences of this plea. By pleading guilty, Defendant may be giving up, and rendered ineligible to receive, valuable government benefits and civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. The conviction in this case may subject Defendant to various collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case; debarment from government contracting; and suspension or revocation of a professional license, none of which can serve as grounds to withdraw Defendant's guilty plea.

B.   No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the Court.

C.   No one has threatened Defendant or Defendant's family to induce this guilty plea.

D.   Defendant is pleading guilty because Defendant is guilty and for no other reason.

## VIII

### AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE SOUTHERN DISTRICT OF CALIFORNIA

This plea agreement is limited to the United States Attorney's Office for the Southern District of California and cannot bind any other authorities in any type of matter, although the Government will bring

1  this plea agreement to the attention of other authorities if requested

2  by Defendant.

3                                **IX**

4          **APPLICABILITY OF SENTENCING GUIDELINES**

5       The sentence imposed will be based on the factors set forth in 18

6  U.S.C. § 3553(a). In imposing the sentence, the sentencing judge must

7  consult the United States Sentencing Guidelines (Guidelines) and take

8  them into account. Defendant has discussed the Guidelines with defense

9  counsel and understands that the Guidelines are only advisory, not

10 mandatory. The Court may impose a sentence more severe or less severe

11 than otherwise applicable under the Guidelines, up to the maximum in

12 the statute of conviction. The sentence cannot be determined until a

13 presentence report is prepared by the U.S. Probation Office and defense

14 counsel and the Government have an opportunity to review and challenge

15 the presentence report. Nothing in this plea agreement limits the

16 Government's duty to provide complete and accurate facts to the district

17 court and the U.S. Probation Office.

18                                **X**

19        **SENTENCE IS WITHIN SOLE DISCRETION OF JUDGE**

20      This plea agreement is made pursuant to Federal Rule of Criminal

21 Procedure 11(c)(1)(B). The sentence is within the sole discretion of

22 the sentencing judge who may impose the maximum sentence provided by

23 statute. It is uncertain at this time what Defendant's sentence will

24 be. The Government has not made and will not make any representation

25 about what sentence Defendant will receive. Any estimate of the probable

26 sentence by defense counsel is not a promise and is not binding on the

27 Court. Any recommendation by the Government at sentencing also is not

28

Plea Agreement                    14            Def. Initials _OE_
                                                 21-CR-1623-JLS

1  binding on the Court. If the sentencing judge does not follow any of

2  the parties' sentencing recommendations, Defendant will not withdraw

3  the plea.

4  **XI**

5  **PARTIES' SENTENCING RECOMMENDATIONS**

6      A.   SENTENCING GUIDELINE CALCULATIONS

7      Although the Guidelines are only advisory and just one factor the

8  Court will consider under 18 U.S.C. § 3553(a) in imposing a sentence,

9  the parties will jointly recommend the following Base Offense Level,

10  Specific Offense Characteristics, Adjustments, and Departures:

11      1.   Base Offense Level   32
          [USSG §§ 2D1.1(c)(4), 2E1.1(a)(2), 1B1.3(a)]

12      2.   Safety Valve   -2*
13         [USSG §§ 2D1.1(b)(18), 5C1.2]

       3.   Aggravating Role (Manager / Supervisor)   +2**
14         [USSG § 3B1.1(c)]

15      4.   Money Laundering   +2
          [USSG §§ 2S1.1(b)(2)(B), 1B1.3(a)]

16      5.   Acceptance of Responsibility   -3
17         [USSG § 3E1.1]

       6.   Combination of Circumstances   -3[2]
18         [USSG § 5K2.0]

19

20      **\* If Defendant meets the requirements for Safety Valve as provided**

21  **under USSG §§ 2D1.1(b)(18) and 5C1.2 or meets the requirements under**

22  **USSG § 5C1.2(a)(2)-(5) and the criminal history requirements as**

23  **provided in the First Step Act, 18 U.S.C. § 3553(f), he would be**

24  **eligible for a two-level reduction of the Guidelines. Defendant will**

25  _____

26      [2] This three-point departure is based on Defendant's timely waiver
   of extradition hearings in Colombia, which saved time and resources in
27  litigating his extradition to the United States; expeditious resolution
   of the case in that he did not file substantive motions; and waiver of
28  appeal and collateral attack.

not be eligible for a Safety Valve reduction if the enhancement for aggravating role applies, as the Government will argue at sentencing and as noted below. As a result, the Government will not recommend a Safety Valve reduction at sentencing, but Defendant may argue against the application of the aggravating-role enhancement, as noted below, and may argue for and recommend a Safety Valve reduction at sentencing.

\*\* At sentencing, the United States will argue that this aggravating role enhancement applies to Defendant under USSG § 3B1.1(c), and Defendant may argue that this enhancement does not apply.

B.    ACCEPTANCE OF RESPONSIBILITY

Despite paragraph A above, the Government need not recommend an adjustment for Acceptance of Responsibility if Defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following:

1.   Fails to truthfully admit a complete factual basis as stated in the plea at the time the plea is entered, or falsely denies, or makes a statement inconsistent with, the factual basis set forth in this agreement;

2.   Falsely denies prior criminal conduct or convictions;

3.   Is untruthful with the Government, the Court or probation officer; or

4.   Breaches this plea agreement in any way.

C.    FURTHER ADJUSTMENTS AND SENTENCE REDUCTIONS INCLUDING THOSE UNDER 18 U.S.C. § 3553

Defendant may request or recommend additional downward adjustments, departures, or variances from the Sentencing Guidelines

1    under 18 U.S.C. § 3553. The Government may oppose any downward

2    adjustments, departures, or variances not set forth in Section X,

3    paragraph A above.

4        D.    NO AGREEMENT AS TO CRIMINAL HISTORY CATEGORY

5        The parties have **no** agreement as to Defendant's Criminal History

6    Category.

7        E.    "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION

8        The facts in the "factual basis" paragraph of this agreement are

9    true and may be considered as "relevant conduct" under USSG § 1B1.3 and

10   as the nature and circumstances of the offense under 18 U.S.C.

11   § 3553(a)(1).

12       F.    PARTIES' RECOMMENDATIONS REGARDING CUSTODY

13       The United States will recommend that Defendant be sentenced to

14   the **low end** of the advisory Guideline range recommended by the

15   Government at sentencing, after recommending and incorporating a

16   variance under 18 U.S.C. § 3553(a) equivalent to one level under the

17   Guidelines.

18       G.    SPECIAL ASSESSMENT/FINE/FORFEITURE

19           1.    Special Assessment

20       The parties will jointly recommend that Defendant pay a special

21   assessment in the amount of $100.00 per felony count of conviction to

22   be paid forthwith at time of sentencing. Special assessments shall be

23   paid through the office of the Clerk of the District Court by bank or

24   cashier's check or money order made payable to the "Clerk, United States

25   District Court."

26   //

27   //

28

Plea Agreement                         17                    Def. Initials  OE
                                                             21-CR-1623-JLS

2.  <u>Fine</u>

The parties have no agreement as to what fine, if any, Defendant will be sentenced to pay.

H.  <u>SUPERVISED RELEASE</u>

If the Court imposes a term of supervised release, Defendant will not seek to reduce or terminate early the term of supervised release until Defendant has served at least two-thirds of the term of supervised release and has fully paid and satisfied any special assessments, fine, criminal forfeiture judgment, and restitution judgment.

**XII**

**<u>DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK</u>**

Defendant waives (gives up) all rights to appeal and to collaterally attack every aspect of the conviction and sentence. This waiver includes, but is not limited to, any argument that the statute of conviction or Defendant's prosecution is unconstitutional and any argument that the facts of this case do not constitute the crime charged. The only exception is Defendant may collaterally attack the conviction or sentence on the basis that Defendant received ineffective assistance of counsel. If Defendant appeals, the Government may support on appeal the sentence or restitution order actually imposed.

**XIII**

**<u>BREACH OF THE PLEA AGREEMENT</u>**

Defendant and Defendant's attorney know the terms of this agreement and shall raise, before the sentencing hearing is complete, any claim that the Government has not complied with this agreement. Otherwise, such claims shall be deemed waived (that is, deliberately not raised despite awareness that the claim could be raised), cannot later be made

to any court, and if later made to a court, shall constitute a breach of this agreement.

Defendant breaches this agreement if Defendant violates or fails to perform any obligation under this agreement. The following are non-exhaustive examples of acts constituting a breach:

1.  Failing to plead guilty pursuant to this agreement;

2.  Failing to fully accept responsibility as established in Section X, paragraph B, above;

3.  Failing to appear in court;

4.  Attempting to withdraw the plea;

5.  Failing to abide by any court order related to this case;

6.  Appealing (which occurs if a notice of appeal is filed) or collaterally attacking the conviction or sentence in violation of Section XI of this plea agreement; or

7.  Engaging in additional criminal conduct from the time of arrest until the time of sentencing.

If Defendant breaches this plea agreement, Defendant will not be able to enforce any provisions, and the Government will be relieved of all its obligations under this plea agreement. For example, the Government may proceed to sentencing but recommend a different sentence than what it agreed to recommend above. Or the Government may pursue any charges including those that were dismissed, promised to be dismissed, or not filed as a result of this agreement (Defendant agrees that any statute of limitations relating to such charges is tolled indefinitely as of the date all parties have signed this agreement; Defendant also waives any double jeopardy defense to such charges). In addition, the Government may move to set aside Defendant's guilty plea.

1  Defendant may not withdraw the guilty plea based on the Government's

2  pursuit of remedies for Defendant's breach.

3     Additionally, if Defendant breaches this plea agreement: (i) any

4  statements made by Defendant, under oath, at the guilty plea hearing

5  (before either a Magistrate Judge or a District Judge); (ii) the factual

6  basis statement in Section II.B in this agreement; and (iii) any

7  evidence derived from such statements, are admissible against Defendant

8  in any prosecution of, or any action against, Defendant. This includes

9  the prosecution of the charge(s) that is the subject of this plea

10 agreement or any charge(s) that the prosecution agreed to dismiss or

11 not file as part of this agreement, but later pursues because of a

12 breach by the Defendant. Additionally, Defendant knowingly,

13 voluntarily, and intelligently waives any argument that the statements

14 and any evidence derived from the statements should be suppressed,

15 cannot be used by the Government, or are inadmissible under the United

16 States Constitution, any statute, Rule 410 of the Federal Rules of

17 Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, and

18 any other federal rule.

19                                  **XIV**

20              **CONTENTS AND MODIFICATION OF AGREEMENT**

21     This plea agreement embodies the entire agreement between the

22 parties and supersedes any other agreement, written or oral. No

23 modification of this plea agreement shall be effective unless in writing

24 signed by all parties.

25 //

26 //

27 //

28

1

### XV

### DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, Defendant certifies that Defendant has read it (or that it has been read to Defendant in Defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

### XVI

### DEFENDANT SATISFIED WITH COUNSEL

Defendant has consulted with counsel and is satisfied with counsel's representation. This is Defendant's independent opinion, and Defendant's counsel did not advise Defendant about what to say in this regard.

TARA K. MCGRATH
United States Attorney

_4/25/24_
DATED

JOSHUA C. MELLOR
MIKAELA L. WEBER
PETER S. HORN
Assistant U.S. Attorneys

_4/16/24_
DATED

MATTHEW J. LOMBARD
Defense Counsel

**IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" SECTION ABOVE ARE TRUE.**

_04/18/24_
DATED

OSEMAH ELHASSEN
Defendant

Plea Agreement

21

Def. Initials _OE_
21-CR-1623-JLS