TARA K. McGRATH
United States Attorney
JOSHUA C. MELLOR
California Bar No. 255870
MIKAELA L. WEBER
California Bar No. 279391
PETER S. HORN
California Bar No. 321358
New York Bar No. 5333653
Assistant U.S. Attorneys
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
Tel: 619-546-9733/9734/6795
joshua.mellor@usdoj.gov
mikaela.weber@usdoj.gov
peter.horn@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>OSEMAH ELHASSEN (17),<br><br>Defendant. | Case No.: 21-CR-1623-JLS-17<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date: November 15, 2024<br>Time: 9:30 a.m.<br>Courtroom: 4D<br>Honorable Janis L. Sammartino |

## I.   INTRODUCTION

Elhassen was a distributor of Anom devices in Colombia. He had a significant role in the Anom Enterprise, and he was directly involved in drug trafficking and money laundering. The government recommends that he be sentenced to 81 months in prison and three years of supervised release.

## II. FACTS

Given the Court's familiarity with the case from prior motions and hearings, the facts presented here are tailored to Elhassen's involvement and role in the Anom conspiracy. In short, he was a Colombia-based distributor for the Anom Enterprise and was involved in the conspiracy for over a year and a half—until the global Anom takedown in June 2021. *See* Plea Agreement § III.B, ¶¶ 4, 5, 7, 16-17 (pages 4-5, 7-10). He was based in Bogotá during this time, and his own messages show his role. For example, in a May 2020 message to another Anom user, Elhassen wrote that he was "Colombia agent" for Anom and discussed sending a California phone number as a "favor" for a friend in Australia. *See id.* ¶ 16(b) (page 7). In March 2021, he wrote to another defendant in this case, Shane May, that "I [Elhassen] am anom colombia" as they discussed Anom sales there. *See id.*, ¶ 16(h) (page 9).[1]

The Anom Enterprise was responsible for the distribution and sales of Anom hardened encrypted devices and associated drug trafficking, money laundering, and obstruction of justice offenses; indeed, the devices were intended for criminal use. *See id.*, ¶¶ 1-18 (pages 3-10). Anom users, including members of the conspiracy charged here, were directly involved in trafficking large amounts of drugs, laundering proceeds, and obstructing justice through wiping Anom devices. And Elhassen himself was responsible for at least drug trafficking and money laundering.[2] While the plea agreement's factual basis details a number of facts of Elhassen's involvement, the government here outlines certain messages as examples of his participation in the conspiracy and the predicate offenses.

For instance, in September 2020, Elhassen and another co-defendant here, Baris Tukel, discussed several methods of concealing cocaine and "start[ing] of[f] small" together with a job of "100-150kg [sic]." Elhassen relayed that a contact of his was considering using

---

[1] His role in Colombia is not diminished by the fact that a different defendant here, Dragan Nikitovic, was also a Colombia-based Anom distributor. Nikitovic worked primarily from Cali, and each were significant distributors in the conspiracy.

[2] The United States is not seeking an obstruction-of-justice enhancement as to Elhassen.

| | |
|---|---|
| 1 | a fishing boat leaving New Zealand with "600 kg." They shared multiple photos of cocaine |
| 2 | paste and the production process, and Elhassen noted that producing cocaine was "different |
| 3 | from oil [methamphetamine] // As long as you can produce good snow." In terms of |
| 4 | concealment, Elhassen and Tukel talked about hiding cocaine in "mineral carbon," sugar, |
| 5 | and "chemical conceal jobs" generally, and using various companies to accomplish the |
| 6 | trafficking. *See also* Plea Agreement § III.B, ¶ 7(a) (page 5). About a month later, in |
| 7 | October 2020, Elhassen and Tukel corresponded more about cocaine trafficking and the |
| 8 | possibility of using a coffee company for it. *See also id.*, ¶ 7(b) (page 5). In the same |
| 9 | message string, Elhassen also confirmed that he was "doing anom" in Colombia. *Id.* |
| 10 | Indeed he was. Elhassen's Anom messages show significant distribution in Colombia |
| 11 | and other places. For example, he was involved in the sales of Anom devices in Bogotá and |
| 12 | Cali in December 2019, and Elhassen also set out the price per device (about $960 each). |
| 13 | *See id.*, ¶ 16(a) (page 7). On another occasion, in October 2020, he and another Anom user |
| 14 | discussed prices for multiple Anom devices, with Elhassen providing his own contact |
| 15 | information for payment—about $7,300 for seven devices. *See id.*, ¶ 16(d) (page 8). In |
| 16 | 2021, he also worked with another defendant in this case, Maximilian Rivkin, as he and |
| 17 | Rivkin made arrangements for the sale of two Anom devices in Cali, one in Ecuador, and |
| 18 | one in Argentina, with a surcharge for payment by Bitcoin. *See id.*, ¶ 16(e) (page 8). As his |
| 19 | discussions with Rivkin continued, Elhassen noted that he could no longer reduce his price |
| 20 | as he had already given one device for free to a contact in the "medellin cartel." *See id.*, |
| 21 | ¶ 16(f) (page 8). |
| 22 | Elhassen also participated in providing Anom device support and arranging |
| 23 | subscription renewals, among other sales and price-setting activity (as noted above). *See* |
| 24 | *id.*, ¶¶ 16(g), (i), (j) (pages 8-9). An April 2021 exchange with another Anom user further |
| 25 | demonstrates Elhassen's role in handling Anom sales and services; a screenshot of an Anom |
| 26 | portal at that time showed Elhassen as the "agent" for at least six other Anom end-users and |
| 27 | their devices. *See id.*, ¶ 16(i) (page 9). |
| 28 | |

Elhassen was arrested in Colombia in June 2021 based on the indictment and arrest warrant in this case. He did not challenge his extradition to the United States. Elhassen was held in custody in Colombia until he was extradited to this District in May 2023, and he pleaded guilty to Count 1 of the superseding indictment in May 2024.

### III. GUIDELINES

This section sets forth the relevant Sentencing Guidelines. In Elhassen's plea agreement, the parties agreed on the Guidelines while allowing argument on an adjustment for role. Elhassen's aggravating role is discussed separately in subsection B below.

#### A. The Plea Agreement

Under the applicable RICO Guideline, USSG § 2E1.1, the base offense level is the greater of (a) 19, or (b) the offense level applicable to the underlying racketeering activity. The Anom Enterprise's racketeering activity involved drug trafficking, money laundering, and obstruction of justice, and the drug Guidelines apply here because they produce the highest base offense level. For Elhassen, the base offense level is 32 under USSG §§ 2D1.1(c)(4) and 1B1.3(a). That is based on the distribution, importation, and exportation of at least 15 kilograms of cocaine, which was not only reasonably foreseeable to Elhassen, *see* USSG § 1B1.3(a)(1), but which he was also involved in himself. *See* Plea Agreement § III.B, ¶¶ 1, 6-7, 17-18; § XI.A (pages 3-5, 10, 15).

A two-level money laundering enhancement applies under USSG § 2S1.1(b)(2)(B) and 1B1.3(a)(1) because of the money laundering conduct foreseeable to Elhassen and in which he participated. *See* Plea Agreement § III.B, ¶¶ 1, 10-11, 16-18; § XI.A (pages 3, 6-10, 15).

Elhassen's role is discussed below. Because he had an aggravating role and is subject to a two-level enhancement under USSG § 3B1.1(c), he is ineligible for a safety-valve reduction or any reduction for being a zero-point offender under § 4C1.1. *See* USSG §§ 5C1.2(a)(4), 4C1.1(a)(10).

The United States moves for a third level under USSG § 3E1.1 for Elhassen's acceptance of responsibility and timely notification of his intent to plead guilty, which has allowed the government to save resources and avoid preparing for trial as to him.

Before departures, the total offense level is 33, producing a Guideline range of 135 to 168 months in custody, a supervised release range of one to three years, and a fine range of $35,000 to $250,000.

Finally, there should be a three-level departure under USSG § 5K2.0 for a combination of circumstances: based on Elhassen's timely waiver of extradition hearings in Colombia, expeditious resolution of his case here without his filing substantive motions, and his full waiver of appeal and collateral attack. *See* Plea Agreement § XI.A (page 15 & n.2).

The adjusted offense level is 30, with a Guideline range of 97 to 121 months' imprisonment.

### B. Aggravating Role

Under USSG § 3B1.1(c), a defendant is subject to a two-level aggravating role adjustment if he "was an organizer, leader, manager, or supervisor in any criminal activity other than described in [subsections] (a) and (b)…" A defendant can receive an adjustment so long as he was the organizer, leader, manager, or supervisor of one or more other participants; but an enhancement can also be warranted when the defendant had management responsibility over the property, assets, or activities of the organization, even if he did not organize, lead, manage, or supervise another participant." USSG § 3B1.1, cmt. n. 2. "Leadership" and "organizational" roles can be distinguished from "management or supervision" roles through several factors, including "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." *Id.*, cmt. n. 4.

"A single incident of persons acting under a defendant's direction is sufficient evidence to support a two-level role enhancement." *United States v. Maldonado*, 215 F.3d 1046, 1050 (9th Cir. 2000) (affirming two-level enhancement). The "least common denominator" needed to establish any aggravating role "is that the defendant exercised some control over others involved in the commission of the offense or was responsible for organizing others for the purpose of carrying out the crime." *United States v. Ehmer*, 87 F.4th 1073, 1144 (9th Cir. 2023) (affirming two-level enhancement); *see also United States v. Paopao*, No. 22-10019, 2022 WL 17101154, at *1 (9th Cir. Nov. 22, 2022) (unpublished) (affirming enhancement when defendant "served as a local manager for the drug conspiracy, directed the efforts of a codefendant, and developed a local market for the conspiracy's drugs"). The government has the burden of showing the defendant's role by a preponderance of evidence. *Maldonado*, 215 F.3d at 1051 (but the court may also rely on evidence in the PSR).

Here, the United States has agreed to seek only a two-level enhancement, rather than a three- or four-level enhancement as an organizer, leader, manager, or supervisor of the criminal activity. The two-level adjustment properly applies to Elhassen. His status as a distributor alone shows that he was a leading member in the overall Anom conspiracy who promoted the use of Anom devices and the development of South American markets for Anom devices. And he had a managerial and organizational role in that position as a distributor. Elhassen represented to other Anom users that he was a primary Anom contact and distributor in Colombia—and that was true. He sold devices within Colombia, including to at least one cartel by his own admission in messages, and within other countries such as Ecuador and Argentina. Elhassen's management and organization is also evident from his being an agent for at least several other end-users, and his ability on multiple occasions to set prices and handle payments for Anom devices. *E.g.*, Plea Agreement § III.B, ¶¶ 16(d), (f) (page 8); *Maldonado*, 215 F.3d at 1050; *Paopao*, 2022 WL 17101154, at *1.

1  Accordingly, the Court should apply a two-level enhancement for Elhassen's aggravating role in the Anom conspiracy under USSG § 3B1.1(c).

### C. Fine

Elhassen could be subject to a significant fine based on his conduct, the conviction, and the Guidelines. Nonetheless, the government is not recommending a fine in these particular circumstances. He made money distributing Anom devices, and he has retained counsel. At the same time, based on information received from the defense, the government understands that he has limited financial resources at this time, and the government believes Elhassen will receive an adequate sentence, including for deterrence purposes, without the imposition of a fine. Accordingly, the government recommends that no fine be imposed as to Elhassen.

## IV. SECTION 3553(a)

The United States has also considered the factors set forth in 18 U.S.C. § 3553(a). In light of those factors, the government recommends a variance equivalent to one-level under the Guidelines—taking the low end to 87 months in custody, under the plea agreement (*see* § XI.F (page 17))—and a further six-month variance, to 81 months. This 81-month recommendation takes into account the seriousness of the offense and the defendant's involvement in the Enterprise, as well as the need for specific and general deterrence, among other factors. It also accounts for Elhassen's personal history and characteristics, which are mitigating in certain respects. Overall, a sentence slightly below the low end of the Guideline range is justified here, and an 81-month custodial term is sufficient but not greater than necessary in Elhassen's case.

//
//
//
//
//
//

## V. CONCLUSION

For the foregoing reasons, Elhassen should be sentenced to 81 months in custody, three years of supervised release, no fine, and a $100 special assessment.

DATED: November 7, 2024              Respectfully submitted,

TARA K. McGRATH
United States Attorney

*/s/ Peter S. Horn*
JOSHUA C. MELLOR
MIKAELA L. WEBER
PETER S. HORN
Assistant U.S. Attorneys
Attorneys for the United States