UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | Case No. 21-CR-01623-JLS |
| v. | Friday, November 15, 2024 |
| OSEMAH ELHASSEN, Defendant. | Sentencing Hearing |

BEFORE THE HONORABLE JANIS L. SAMMARTINO

UNITED STATES DISTRICT JUDGE

REPORTER'S TRANSCRIPT OF PROCEEDINGS

PAGES 1 THROUGH 32

APPEARANCES:

For Plaintiff: UNITED STATES ATTORNEY'S OFFICE
880 Front Street, Suite 6293
San Diego, California 92101-8807
BY: PETER HORN, AUSA
BY: MIKAELA WEBER, AUSA
BY: JOSHUA MELLOR, AUSA

For Defendant: Law Offices of Matthew J. Lombard
11400 West Olympic Blvd, Suite 1500
Los Angeles, California 90064-1543
BY: MATTHEW LOMBARD, ESQ.

Reported By: Stephanie Whitehead, RDR, CRR, CRC, CVR, CSR
District Court Clerk's Office
333 West Broadway, Suite 420, San Diego, California 92101
(Reported stenographically; transcribed via computer)

FRIDAY, NOVEMBER 15, 2024; 9:50 A.M.

* * *

THE CLERK: Matter number four, 21-CR-1623, United States of America v. Osemah Elhassen for sentencing.

MR. HORN: Good morning, your Honor. Peter Horn and Mikaela Weber for the United States on this matter.

THE COURT: Thank you.

MR. LOMBARD: And good morning, your Honor. Matthew Lombard on behalf of Osemah Elhassen who will be coming from the back in custody.

Mr. Elhassen is before the Court, your Honor.

THE COURT: Okay.

MR. LOMBARD: And, your Honor, before we start could I approach briefly with government counsel?

THE COURT: Yes.

(Proceedings at sidebar are sealed and not included herein.)

MR. LOMBARD: Thank you, your Honor.

THE COURT: Certainly.

The Court has read and considered the following documents for sentencing this morning: I have the presentence report. I have defendant's sentencing summary chart. I have defendant's sentencing memorandum

with letters attached, both the defendant's letter from his mother, from his siblings, from friends, from his attorney -- the other attorney that handled matters in the other country. I have the government's sentencing memorandum, the government's sentencing summary chart, and underlying plea agreement.

Is that everything?

MR. LOMBARD: On behalf -- yes, your Honor. On behalf of Mr. Elhassen.

MR. HORN: I believe so, your Honor.

THE COURT: Okay. I've thought a lot about this case because it's an unusual case. It's different, and everybody who's involved in it is aware of that. I'm inclined not to give the aggravated role. I don't think there has been showing by a preponderance of the evidence that there was a control over others, that there was management over others who were criminally responsible for this. And so I would tentatively adopt the calculation that the defense is recommending. And that would mean he would get -- he would get safety valve and he would get zero criminal history points. I think I'm missing something.

MR. LOMBARD: It's a six-level swing.

THE COURT: It's a six-point swing because you don't give the plus 2. So you give him minus 2 -- two

minus 2s and you don't add the pluses. So it's 6 points; it's a 24 not a 30 offense level at the bottom line. I would give the three points that's agreed upon in the plea agreement, but that's a tentative, I'm open to hearing everything, but I want counsel to know I spent an awful lot of time looking at this. So go ahead.

MR. LOMBARD: Thank you, your Honor. And I appreciate the tentative. I also have spent a lot of time on this given the dramatic difference in the guideline calculation. I do think, just for the record --

THE COURT: You vary downward from that guideline range?

MR. LOMBARD: I do, your Honor. Let me focus here on aggravated role because I don't want to waste the Court's time.

THE COURT: No, do the whole thing. Do aggravated role and then tell me everything. It's important, sir.

MR. LOMBARD: Thank you, your Honor. So I -- first I'd like to say that from the start of this no one disagrees with the seriousness of the scope of this crime.

THE COURT: Right.

MR. LOMBARD: And Mr. Elhassen, more than anyone -- who has been in La Picota, Colombia, and has watched his life disintegrate before him -- understands the seriousness of the decision and the impact, worldwide, this case has had, his actions have had. So I want to start with that point.

The second point regarding aggravated role. He, Mr. Elhassen, never recruited his customers in this case. As the Court has read this, we know that DEF CO, who's in charge of the organization, the phone organization, is the person who would send the information to Mr. Elhassen. Mr. Elhassen would buy a phone with his own money. He didn't have his own clients.

He would take that phone, send it to DEF CO, which was the FBI. They would organize it. He would send the IMEI -- IMEI numbers to DEF CO. DEF CO would fix it for him, send it back to him, and then he would arrange, through DHL or FedEx, to send it to whoever the customers were. He didn't recruit his own customers. He didn't have his own customers. He just simply invested his own money and got reimbursed for that money that he purchased.

And the most important thing, I think, of all of this is he never had access to the actual portal

which controlled the phone. So it was kind of like -- I've used the analogy with the government, and we've gone back and forth on this: Say, for example, T-Mobile is the phone company, and that would be DEF CO, and Mr. Elhassen was a person who is walking around the store waiting for customers to come in and sell them a phone. He doesn't control what phone number you get. He doesn't control what's said on the phone. He doesn't control any aspects of the phone.

Now, he may know the person coming into the store -- and he does know. He's admitted that. The person coming into store is a person who is up to nefarious good, who doesn't have the best interests, who's going to use the phone for drug trafficking. That's clearly what he and his conversations indicate.

So he knew that part, but he didn't control the phone. He couldn't wipe the phone, let's say, for example, like other defendants like Zakhimi -- who the government doesn't recommend a role enhancement for -- had the access to wipe the phones. He doesn't send, you know, hundreds of phones to other countries like Zakhimi.

I wanted to -- one of the points I wanted to make out to the Court if the Court didn't review it but took the factual basis -- and the Court just continued

his sentencing this morning, but in the factual basis for one of the codefendants, for Mr. Zakhimi, his behavior, as outlined in the factual basis, just to list it, he recruited people for Anomi [sic] England. He requested 200 SIM cards for the -- for the phones. He prepared phones for shipment to Argentina. None of those, Mr. Elhassen did. He discussed building a client base. Mr. Elhassen didn't do that. He was able to access the portal to wipe phones. Mr. Elhassen didn't have that. He talked about the sale of five phones in the Netherlands and gave the codes for the phones; 30 phones to Slovenia; 10 phones to Germany. Could arrange a driver to deliver the phones. 50 phones to Italy. Able to reset and support, and said I'm the support for Anom 24/7; I can reset this phone -- wipe this phone for you. He helped wipe phones when a person who owned the phones said I have an urgent request.

Mr. Elhassen had none of those. He had none of that ability. He did go out and send the customers the phone. He did contact DEF CO and send the phones in. And if there was a problem, for example, if the phone didn't work, he had to go and talk to DEF CO. "Hey, this phone doesn't work. I don't know" --

So he was kind of -- he's stuck in this position where he is a distributor, and I cite the cases

in the case law. Just because you have an important role does not necessarily mean you have organizational control or managing --

THE REPORTER: I'm sorry. Organizational control or?

MR. LOMBARD: Supervisory position.

THE REPORTER: Okay. Slow down just a little.

MR. LOMBARD: Sorry, I'm getting a little excited. If I go too fast, let me know.

THE REPORTER: Thank you.

MR. LOMBARD: And then also I want to say that there is -- so the access to the portal is a key piece in this, I would like to say to your Honor, because without that access, it just shows the level of trust and level of confidence that they had in him. And if you look at the cases that I cite, in the *Helmy* case, *the Hoac* case, you must have managed or supervised one participant to have the aggravated role enhancement.

Or in *Hoac*, that case they applied the Mares-Molina standard. And there, the defendant opened the trading company to export heroin. He received the shipping information. He helped package the drugs into the containers to put on the shipping container. He assisted loading the drugs in. But the role wasn't appropriate in that case, because just because you have

an organizational or important role doesn't mean you are actually managing or supervising another coconspirator. And that's what the case says.

And then in the *Pimental-Lopez* case it says even if you're an important person in the conspiracy, you do not get the role enhancement if you have -- if you don't have control over others.

I've pleaded this to the government. I've pleaded this to probation. And all I have got back was he knew they were used for drugs; he had an important role. And what they have said is he was Anom Colombia, and that's kind of what they're hanging their hat on, I believe. And I never really understood that. What does that mean if you're Anom Colombia? That means you have supervisory or managerial control over other coconspirators? If so, where is that piece? Where is that piece of the factual puzzle that we need to hang our hat on that, and I don't have that.

And we know that Anom Colombia means that -- DEF CO says to him "You are Anom Colombia." DEF CO's telling him, you tell people "When you go out" -- DEF CO being the FBI -- "When you go out to sell this phone, you tell them you're Anom Colombia." Meaning I am the sole -- and I think what the government would say, and it's a fair interpretation, that you are the sole

responsible for these phones for Colombia. But we know that's not true because in the factual basis there are other codefendants who have said in their factual basis and in their recordings, I'm Anom Colombia.

So all of that combined, I don't think it meets the standard for the plus 2, and I don't think he qualifies under the aggravated role enhancement.

Also, not that it's necessarily that important, but he sold -- to his admission, 30 phones. The government would say 30 to 50. Out of 1,200 phones were sold, 30 to 50 phones for a person tells you -- and the length of when he was involved in this conspiracy, and how he got to this conspiracy, which I'll address under 3553(a), given his work and his divorce and his relationship with his wife, tells you the position he was in and not someone who's actively looking for a higher-ranking position in this conspiracy.

He took his instructions from DEF CO and we know that Zakhimi, the codefendant, did not get the role enhancement. And he clearly was -- from the factual basis, looks way more involved than my client, Mr. Elhassen. Dr. Djek, another defendant before the Court, has the same agreement that I have with the government. Whereas we can argue for the role not applying and he can argue for role to -- the government

can argue that the role can apply for him. And, in there, he does say I'm Anom Colombia, and Dr. Djek does have access to the portal in that case.

So they're distinguished even from that case. I would argue that Mr. Elhassen is less culpable than the two -- one where the government's going to be asking for role and the defense can argue for it not, and Mr. Zakhimi, where they're not asking for it.

With regard to the aspects of his -- the 3553(a) factors and the sentence I'm asking for here in court, Mr. Elhassen was a upstanding citizen. If you look at his employment history, it's quite remarkable, because to see someone at his age before the Court for the first time in anything with a 2006 to 2014 job as a flight attendant, steady employment, college-educated, here with his mother and father, you know, has a family, two kids. It's kind of -- how does a person like this get into this deep of water? I mean, we're all the way into the deep, deep end here, and it just kind of shows you the contrast of how he got there and why he's not an aggravated role.

First of all, your Honor, he was -- had a perfect history, criminal history, a family history. He got married in 200- -- I believe it's -- -7, met his wife, and they lived together. And his wife was from

Colombia, and they were living in Australia. And her -- his wife's mother got sick. And they have two children, two young boys. And Mr. Elhassen's wife went to Colombia to care for his -- her mother. And as she got there into taking care of her mother, she realized that I don't want to be married. I don't want to be in this relationship for whatever reason -- whether it's religious or personal; I never got that piece of it -- but she wanted to divorce him. And so they got divorced in 2017. Mr. Elhassen at that time was living in Dubai and selling cars. He had another small company.

He moved to Colombia, Bogotá, to be with his children, his two young boys. He gets to Bogotá, doesn't speak any Spanish, very little, I think. I shouldn't say "any"; he speaks some but not really any to function. He's living in a hotel using his savings from his pension from his working at Emirates Airlines. He's borrowing money from his parents' pensions to live in Colombia, in Bogotá, to spend time with his kids. He tries to get a job. He can't get a job, and that's how he gets into this. He's like, I need a job. He looks around and, oh, he can sell phones for these folks here and that's how he got involved.

Now, clearly, once he gets involved and he's talking to people, he understands that there's -- people

are using these phones for drug trafficking and he doesn't stop. So I'm not going to belie [sic] that issue.

But I wanted you to know that piece, that he comes from a history of really good employment, college-educated, and -- and then his life takes a huge right turn, or even a U-turn. Because when he gets arrested on the extradition warrant he goes to La Picota, which is one of the most horrendous prisons in the world.

La Picota is -- and I submitted it for the Court's consideration; I'm not going to belabor it -- but just a place where rodents are running through the prison, in your cell. You know, as his attorney in Bogotá told you, that there's two episodes where there's no water for three days at a time. There's -- he was in sepsis. He was in the hospital for 25 days. He didn't know if he was going to live or die. He didn't have the language -- didn't understand the language and doctors are making decisions about his life, was having surgery, not having surgery.

And that's when he writes to the Court. I mean, he lost 67 pounds. He writes to the Court "I want to get out of here. Come get me." And I think the Court rejected the letter: "I can't take this letter

from you." And that's -- he wanted to come as soon as possible because of the conditions.

And then on top of it, to make his time, his two years in La Picota even more difficult and more horrendous is that the news -- this was a huge story, obviously, as the Court knows. In the news, it was Mr. Elhassen is connected with Anom phones. Well, every big-time drug dealer and person in La Picota says that's you and start extorting him. And they start extorting him, and he doesn't have any money. So what does he do? He ends up getting beat up, and he gets beat up severely, and he spends part of his time in the hole. And that's where he gets the most desperate and has the most kind of mental breakdown that he's had.

So we're talking from a man who's worked all his life, had a great upbringing -- oh, and I should add, during that time, his father also dies. So he loses his father, he's in La Picota, and then has to hide in the hole because he's being assaulted because people think he's some bigtime drug dealer connected to the Anom because it's all over the news.

So when you look at what's an appropriate sentence for someone in his case, and I can't talk about the other -- other defendants because I'm not representing them. You know, and I don't represent the

government, and it's a serious case. But for this individual, what he has suffered thus far, he's a dedicated father, he's a college-educated man who has a solid work history. He held a job down from 2006 to 2017 -- 2014. He had bought and sold cars from there from 2014 to 2017.

His life falls apart when he gets divorced, and he makes this bad decision, and he gets stuck in La Picota. But he comes here and he accepts responsibility. This is the first case before your Honor for sentencing.

THE COURT: It is.

MR. LOMBARD: I believe, in fact, he may have been the first to actually plead guilty in this case. This was a very contested case and continues to be contested by most of the defendants. And if you look at the list, to the extent the Court gives it any weight, he's way, way low down on the list of defendants who were responsible or culpable.

So I think that is the argument that I would like to make that supports my recommendation, your Honor, for the sentence that I recommend. And I'd submit unless the Court has any questions.

THE COURT: Not at this time, Counsel. Thank you very much.

Mr. Elhassen, good morning.

THE DEFENDANT: Good morning.

THE COURT: Is there anything you would like to say, sir, before sentence is imposed? You have an opportunity to speak on your own behalf if you would like.

If you're going to read something, just read it slowly.

THE DEFENDANT: Okay.

Your Honor, I want to say sorry to my family. Sorry to my kids, sorry for my father who passed away.

Do you want to read it?

MR. LOMBARD: It's your statement.

THE DEFENDANT: I didn't have a chance to say good-bye to him. Sorry to you and to the government. Your Honor, I've done a big mistake during that difficult time in my life. I was naive, and I lost everything: My family, my kids, my health, and my freedom. And I have trust in your judgment and faith. Thank you.

THE COURT: Okay. Thank you very much, sir. I appreciate the comment.

On behalf of the government.

MR. HORN: Thank you, your Honor. And I appreciate the statement from Mr. Elhassen and

Mr. Lombard's comments. There are some mitigating factors here and that goes into our recommendation. I'll touch on those more in a moment.

To the guidelines, I understand the Court agrees with the parties' joint recommendation of 32. Just briefly, at a high level, we believe that's fair -- a fair place to start based on his involvement, specific involvement in drug trafficking. Under relevant conduct, as the Court may have observed, his offense level could be significantly higher based on the volume of drug trafficking, not just in Colombia, but involved with Anom devices around the world.

In any case, 32 we believe is a fair place to start and just as the parties have agreed under the plea agreement. For role, a couple of more general points, and then to cover some specific facts as to Mr. Elhassen. He is Defendant 17 in this case. The Court knows that. He's not 17 out of 17 in the Anom conspiracy. He's number 17 out of hundreds, thousands. Thousands.

THE COURT: But they're not indicted in this district, sir.

MR. HORN: Correct.

THE COURT: They're not indicted in this district and they're not a part of this case.

MR. HORN: They're not.

THE COURT: But he's 17 out of 17 before me.

MR. HORN: Absolutely, your Honor. And my point is just that there are thousands of Anom users, members of the conspiracy. This case, 17 defendants indicted here are the top members of the enterprise. There are members of the enterprise not before the Court as well, but he is among the top distributors in the conspiracy. So just in terms of the overall conduct -- or context of the Anom conspiracy, he is not -- he's not just the lowest -- the lowest number, the lowest member; there are many, many others.

And, you know, the number 17 versus 16 versus 15, it's not dispositive, and we believe an aggravating role enhancement properly -- properly applies to him. Talking about his conduct and just to touch on Mr. Zakhimi. Mr. Zakhimi is not before the Court today, obviously.

THE COURT: No, he's not.

MR. HORN: The plea agreement is not at issue today. But the government's position as to him is based primarily on him being part of Hosseini's team. Hosseini, very significant distributor, before the Court, as the Court knows. And Mr. Zakhimi was part of the team -- Team Wijzijn. Part of Hosseini's team, kind

of a right-hand man of Hosseini, working for him.

Mr. Elhassen was not in a position like that. He was working for himself, for the enterprise, and --

THE COURT: Who was he in charge of? Who did he manage? Who did he control? Because I haven't been able to find that in anything.

MR. HORN: To jump to a couple of specific facts, as we noted in our sentencing papers, he was -- he was an agent. And one specific message lists him as an agent for several other end users. Now, does that mean he controls exactly what -- for at least six devices and six end users?

So does that mean he controls what they do with the devices? No, not necessarily. But he is -- he is managing their use of Anom devices, managing their subscriptions, their payments. And that goes to some other specific facts as to his -- his organizing and management. He wasn't someone like in the *Hoac* case, or some of the other cases Mr. Lombard cited, someone who was going through the motions, moving bags here or there, facilitating transactions. He is doing all that, but he's also setting prices. He's managing renewals. And he's managing distribution and sales and prices not just for any end users. It is significant that he's a Colombian distributor, that he called himself Anom

Colombia. "I'm a Colombian agent."

He's working directly with significant drug traffickers, money launderers, directly with, as one of his own messages says, Medellín Cartel. So this is not someone who is selling -- selling devices to just anyone on the street. His position, his role in Colombia is especially significant and goes to the aggravating role analysis.

To touch on Mr. Lombard's analogy of the T-Mobile store, it's -- understanding his position, and the defense and the government have discussed various analogies and approaches to role and other things in this case, that's not the right analogy here. He is not a salesperson working in a T-Mobile store. In the first place, these are devices for criminal use, it's an illegal enterprise. That's what he's pleaded guilty to here. He's more, really, not just a regional manager. He's a national manager or a national co-manager of Colombia with, for example, Mr. Nikitovic, who was very active as a distributor during part of the time but not for as long as Mr. Elhassen was. But, again, very significant distributor in Colombia.

So he is not just someone working in the store. He is managing the -- he's managing the territory. And although he may not have gone out and recruited members

and promoted and been as supervisory as, for example, Rivkin, he worked directly with Rivkin, messages with Rivkin. And Rivkin, you know, suggested send two devices here, one to Ecuador, one to Argentina. Rivkin has an elevated role, and some other defendants here do too, but he still has a significant and really in-charge-of role, position, with respect to Colombia.

He also, you know, he set prices, managed renewals, handled payments, received payments, and handled the proceeds of Anom sales. All of those things in the government's view go to -- go to his aggravating role and believe it is -- it is appropriate, that two-level enhancement. We're not recommending three, we're not recommending four, but two for Mr. Elhassen is fully -- fully appropriate and warranted.

Now, to our ultimate recommendation, 81 months, that accounts for a one-level variance as we agreed to in the plea agreement. It also goes a little below that from 87 to 81.

THE COURT: From 97?

MR. HORN: From 97 and a one-level variance under the plea agreement and another six months to 81 is how the government gets there. That's an appropriate sentence. First, there are -- there are very positive things about Mr. Elhassen, about his background.

Clearly, his family support, as Mr. Lombard's comments, papers, and the letters reflect, hopefully someone with some, you know -- some promise and opportunities going forward. And the lack of criminal history, his prior work suggests that compared with other 3553(a) factors specific deterrence may not be as significant as some of the other -- some of the other factors.

The government was also aware early on in the case that he desired to -- to try to get out of Colombia and deal with this case. In fact, his Colombian counsel sent a letter directly to the Court in 2022 as he was trying to move that process forward. It had to take -- he had to go through the full extradition process, as he had the right to do, but he made the efforts he could to try to get here, deal with the case. The government recognizes that and recognizes the conditions he was in, at least for -- for a certain period before he arrived in the U.S.

Nonetheless, it's a -- it's a serious offense, and 81 months recognizes the conduct, which is the enterprise, the distribution of the devices, his particular role in Colombia of all markets. And it recognizes the seriousness of the predicate offenses: Drug trafficking, significant, significant quantities, especially of cocaine and methamphetamine, money

laundering and obstruction of justice. Although we're not recommending an obstruction of justice enhancement, that is a part of the illegal conduct that the conspiracy involved.

So recognizing that seriousness, other 3553(a) factors, including deterrence -- and one aspect of not just Mr. Elhassen's conduct, the sentence here, but the case is -- is deterrence, is general deterrence too. I recognize -- recognize Mr. Elhassen's past and positive characteristics, but the sentence the Court decides for him is significant not just for this case but for devices, apps like this used around the world for criminal purposes. And the Court should send a -- you know, a significant message based on deterrence and other 3553(a) factors in imposing a sentence here.

With that, we'd submit, your Honor, unless the Court has other questions.

THE COURT: Not right now. Thank you, Mr. Horn.

From probation.

PROBATION OFFICER: Your Honor, his updated custody credits are 1,249 days, which is 41 months.

THE COURT: How many months?

PROBATION OFFICER: 41.

THE COURT: Wow. Okay. And that includes the

time -- the period he was in custody --

PROBATION OFFICER: In Colombia.

THE COURT: -- in Colombia?

PROBATION OFFICER: Yes, your Honor.

THE COURT: Okay. Okay. Very good.

Counsel, anything you want to add, sir, before I proceed?

MR. LOMBARD: Just for the record, two things.

THE COURT: Certainly. Certainly.

MR. LOMBARD: Number one, the government did not mention -- did not refute that there was another defendant who said "I am Anom Colombia." So there's another person representing themselves as Colombia. Mr. Elhassen is only in Colombia because of his wife, and he's told to say by DEF CO, the agents, you are Anom Colombia.

The second is, there's no refutation -- refuting that he didn't have access to the portal, which is the main piece that shows you that the conspirator organization trusted and gave him that role and gave him an elevated role. He's not that savvy, to be frank, your Honor. He was a -- he was taken advantage of. He did what he did, but there's a -- there's a north/south, east/west kind of mentality with Mr. Elhassen, I want to say. So other than that, your Honor, I would submit.

I will note that Mr. Zakhimi was given a base offense level of 30, not 32. I can't -- he is not here for sentencing, but his factual basis shows what the government thinks. We went back and forth. This conversation we're having about role, he would have pled guilty a long time ago. This was the issue holding things up, and Mr. Horn and the government and myself have had many conversations about this. And I'm glad we're here before the Court to actually be heard and have this resolved, because we do feel strongly that, yes, the government has a big interest in deterrence here, but you can't just put someone in a role for that sake. And I'd submit.

THE COURT: Okay. Go ahead, certainly.

MR. HORN: Two comments.

THE COURT: Of course.

MR. HORN: I don't mean to argue for role based on the need for deterrence. That really is part of the 3553(a) factor in that part of the government's submission.

Without being able to review all of Mr. Elhassen's messages right now, I'm not sure it's true that he was told to say exactly he was Anom Colombia. But that, ultimately, is not -- is not dispositive. It's not very relevant to the Court's

decision on role. It's really what he -- what he did with it, how he held himself out, and, of course, the specific conduct, the distribution conduct, price-setting, other facts that the government's papers have -- have covered.

And just going to Mr. Lombard's last -- last comment about how he got involved, why he was in Colombia. All of those things the government's considered, I believe the Court can properly consider under the 3553(a) factors. But aggravating role should apply, and all of those other facts along with those other things about his personal history, his characteristics can properly be taken into account under 3553(a).

THE COURT: Okay. Well, I've got adequate information to exercise sentencing discretion, and I'm prepared to make a guideline calculation. Let me indicate at the outset, I don't believe the government has met their burden of proof by a preponderance of the evidence that aggravated role applies here. He was not responsible for organizing others, he didn't have control over others, he was in no way supervising, managing, or controlling other people who were criminally responsible in this conspiracy. So I'm not going to include that in my calculation.

That doesn't detract from the fact that this is an incredibly serious crime, Mr. Elhassen. Very, very serious. I know you regret every moment of it, but the consequences of this are significant, sir. So let me proceed and I'll explain more as I go through this.

We're starting, everybody agrees, with a base offense level of 32. With the Court's decision on aggravated role, you do qualify for safety valve. So that's a minus 2, but you get a plus 2 for money laundering which kind of balances it out and comes out to an adjusted offense level of 32. You've accepted responsibility, you did that early, and that's a three-point reduction. You also have no criminal history which permits me to give you a minus 2 for zero criminal history points.

So now I'm to an offense level of 27. If we stopped here, you'd be looking at 70 to 87 months in custody. The parties have agreed per the plea agreement, and I will accept your agreement, of a minus 3 combination of circumstances. Even the government admits, sir, that this was a very, very serious crime and a significant penalty is appropriate and sanction is appropriate, but they do acknowledge equities on your behalf. And I assume that's the basis for this combination departure, and I accept that. So now with

that minus 3 I'm to an offense level of 24, Criminal History Category I, and that's a range of 51 to 63 months in custody.

Now, this is what I consider as to whether or not you're appropriately in this guideline range. I consider everything about you, your history, your circumstances. I consider everything about the offense that occurred here, and certainly your role in the offense. I consider protection of the public, and that's very significant in a case where drugs are involved because of what drugs do to people's lives, people's families. I consider promoting respect for the law, also a very significant point in a case of this nature that has such broad implications.

I consider general and specific deterrence: Specific as to you, general as to people watching thinking whether or not this is a good way to earn a living, and I consider sentencing disparities so people who do similar things aren't treated in different ways unless there's a justification.

I've never had a case like this before, and those of us who have been working on the case, both the government and defense and other individuals besides yourself, have talked about that a lot. So really what we have to look at is this case. And you're the first

person to come before me for sentencing in this case, so that's why I spent so much time looking at the papers, looking at the cases that were cited to me. But when I consider everything, sir, I'm going to impose the upper end of this range of 63 months in the custody of the Bureau of the Prisons. I think that's sufficient but not greater than what's necessary, given everything I know about your case.

It's going to be followed by three years of supervision. And during those three years of supervision, if you violate any law, state, federal, or local, you could be brought back before the Court and serve additional time in custody, up to the three years.

Counsel, have you reviewed the standard and mandatory conditions with your client?

MR. LOMBARD: I have, your Honor.

THE COURT: Okay. All of those, Mr. Elhassen, apply during your period of supervision.

In addition, the following special condition applies: If you're deported, excluded, or allowed to voluntarily return to your country of origin -- which is Australia, correct?

THE DEFENDANT: Yes.

THE COURT: You're not to reenter the United States illegally, and you're to report to probation

within 24 hours of any reentry into the United States. Supervision will be waived upon your deportation, exclusion, or voluntary departure. I'm not going to impose the fine. The $100 special assessment can be worked off in his remaining time in custody.

Counsel, what is your request as to a housing designation?

MR. LOMBARD: Your Honor, I'm going to request Terminal Island, given his mental and physical ailments.

THE COURT: Okay.

MR. LOMBARD: I think they're best suited -- I understand it's a recommendation, and I've explained that to him.

THE COURT: Right. Okay. So I'll recommend Terminal Island for the medical facility there.

MR. LOMBARD: Yes, your Honor.

THE COURT: For his well-being.

In your plea agreement, on page 18, Mr. Elhassen, you gave up your right to appeal or collaterally attack the judgment in this case and the sentence that I just imposed.

Do you understand that?

You have to answer out loud because my court reporter writes down everything we say.

THE DEFENDANT: Yes. Yes.

THE COURT: Okay. Anything I didn't cover? Government, defense, probation?

MR. HORN: The only housekeeping matter is that I believe he was arraigned and has proceeded only on the superseding indictment. But the original underlying indictment we would just move to dismiss that count as to Mr. Elhassen only.

THE COURT: Okay. That request is granted.

MR. LOMBARD: And, your Honor, I would request, just to make it clear for the BOP, in the judgment and commitment order that the Court -- that BOP is to give credit for the 23 months he was in custody in Colombia, from June 16, 2021 to May 17, 2023 just so there's no one looking at the --

THE COURT: He was being held in that country at the request of the United States Government, correct?

MR. LOMBARD: That's correct, your Honor.

THE COURT: So there's no objection to that, is there?

MR. HORN: No objection to that, no.

THE COURT: Okay. No, certainly, he should get credit for all of that. And as I understood probation, that was taken into account in the 1,249 days, correct?

PROBATION OFFICER: Yes, your Honor, it was.

THE COURT: Okay. And we will make a note of

that, that he should receive that credit.

MR. LOMBARD: Thank you, your Honor.

THE COURT: You're welcome.

Anything else I didn't cover?

MR. HORN: Nothing else for the government. Thank you, your Honor.

THE COURT: Oh, Mr. Elhassen, we're going to give you, sir, copies of the conditions that the Court imposed.

MS. WEBER: Thank you, your Honor. Have a nice weekend.

(Proceedings concluded at 10:34 a.m.)

*C E R T I F I C A T E*

I, Stephanie Whitehead, certify that I am a duly qualified and acting Official Court Reporter for the United States District Court; that the foregoing is a true and accurate transcript of the proceedings as taken by me in the above-entitled matter on November 15, 2024; and that the format used complies with the rules and requirements of the United States Judicial Conference.

Dated: April 28, 2025

*s/ STEPHANIE WHITEHEAD*

Stephanie Whitehead, CSR 10093
U.S. Official Court Reporter